# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMMY RICHARD QUAIR, SR., | Case No. 1:19-cv-00993-BAM (PC) |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| v. | |
| BOARD OF SUPERVISORS, *et al.*, | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE TO PROSECUTE |
| Defendants. | |
| | (ECF No. 8) |
| | **FOURTEEN (14) DAY DEADLINE** |

**I.   Background**

Plaintiff Sammy Richard Quair, Sr. ("Plaintiff") is a former county jail inmate proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On March 30, 2020, the Court issued a screening order granting Plaintiff leave to file an amended complaint or a notice of voluntary dismissal within thirty (30) days. (ECF No. 8.) The Court expressly warned Plaintiff that the failure to comply with the Court's order would result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court order

1

and for failure to state a claim.  (Id. at 14.)  The deadline has expired, and Plaintiff has failed to file an amended complaint or otherwise communicate with the Court.

## II. Failure to State a Claim

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

### B. Plaintiff's Allegations

Plaintiff is currently out of custody.  The events in the complaint are alleged to have occurred while Plaintiff was housed as, it appears, a pretrial detainee[1] at the Kings County Jail.

---

[1] While it appears Plaintiff was a pretrial detainee, it is not certain whether Plaintiff was a pretrial detainee or had been convicted at the time the events in the complaint took place.

Plaintiff names the following defendants: (1) The Board of Supervisors; (2) Timothy Day, Lieutenant; (3) Mrs. Thomas, Lieutenant; (4) Mr. Hernandez, Sergeant; (5) Mrs. Rodriguez, Sergeant; (6) Mr. Stepp, Sergeant; (7) Mr. Wilson, Sergeant; (8) Mr. Chavez, Sergeant; (9), Mr. Stacey, Deputy Sheriff; (10) Mr. Rodriguez, Deputy Sheriff; (11) Mr. Gonzales, Deputy Sheriff; (12) Mr. Ruiz, Deputy Sheriff; (13) Mr. Anderson, Deputy Sheriff; (14) Mr. Quintero, Deputy Sheriff; (15) Mr. Hamilton, Deputy Sheriff; (16) Mr. Gomez, Deputy Sheriff; (17) Mr. Torres, Deputy Sheriff; (18) Mr. Womack, Deputy Sheriff; (19) Mr. Travato, Deputy Sheriff; and (20) Mr. Davis, Deputy Sheriff.

In the first claim, Plaintiff alleges a violation of the Eighth Amendment for cruel and unusual punishment. On March 20, 2019, Plaintiff was arrested in Kings County for under-the-influence of a controlled substance and was taken to the Kings County Jail. Plaintiff had already forced a hypodermic needle syringe into his rectum and during the strip search by Deputy Sheriff Mr. Martin, Plaintiff did not squat and cough all the way, believing the deputy would not see the syringe in his rectum. When the search was completed, the syringe was not discovered, and Plaintiff was taken to a holding cell. Plaintiff "assumed" Mr. Martin saw the syringe, Plaintiff forced it all the way into his rectum and then went through a second strip search. Within a couple of days, Plaintiff "got it out and flushed it." About two weeks later, Plaintiff began to feel sick with pains in his right lower waist-line and back. Plaintiff began hallucinating that lasted a week and half. Plaintiff believes he got "plastic poisoning" to the brain by the syringe. Plaintiff said his actions changed, he talked to himself, spread fecal matter around his cell, kicking his cell door and shower door for an hour trying to get medicals' attention or custody's attention—all things he had never done before. Plaintiff believed the syringe was still inside of him.

He pushed the "911" cell button and told the tower officers over and over he needs medical attention. His right knuckle shattered from banging on the metal door. The next day, Plaintiff awoke on the floor of his cell and his head hurt severely. He punched the sink and shattered his knuckles more. (Medical gave him an Xray (ECF No.1 p.15).) Defendant Quintero, Rodriguez, Womack and DOES came to Plaintiff's cell. Plaintiff told them that he was having "extra severe medical problems" and wanted to speak with the nurse privately. Plaintiff wanted

his feces tested for plastic poisoning.  Defendant Quintero, Rodriguez, Womack and DOES blocked him from talking with the nurse and said he does not have a medical problem.  Plaintiff showed them his rectum and they laughed at him.

Plaintiff became violent, which is against his character and history, doing damage to his cell.  He "was going crazy" from the poisoning.  He talked to himself and began hearing voices in his head, but he had never heard voices before.  The episodes lasted a week.  Plaintiff alleges that once the officers saw him eating his food in his cell with feces everywhere and he would ask for help and they would all ignore him.  Officers Putnam and Mr. Bleins would try to help him by exchanging his bedding and jumpsuits.

Plaintiff was injured because the officers actively interfered with his medical needs and acted like children by laughing at him.  He suffers side effects.  Plaintiff alleges the officers engaged in a conspiracy to violate his constitutional rights.  They did not assist Plaintiff when he was in need.

Plaintiff alleges in claim 2 that defendants violated his right to equal protection.  They violated his right to safety and security of inmates.  It was retaliatory because one of the officers, Mr. Anderson, would not let Plaintiff eat his meals out of Plaintiff's cell.  He told Plaintiff that he could not eat outside of his cell 'its your own shit isn't it – well eat your meal in it."

In claim 3, Plaintiff alleges that he was retaliated against by some of the defendants. Plaintiff had filed a lawsuit in 2014 against Defendant Lieutenant Mr. Day, a named defendant in this case. Plaintiff did not pursue the case against Mr. Day. Plaintiff "assumes" that Lieutenant Mr. Day told his officers down the chain of command to leave Plaintiff in his cell for a week. Officer Mr. Anderson, Mr. Quintero and all named defendants conspired together in retaliation and it was done to benefit Lieutenant Day, who once said to Plaintiff that no one would listen to plaintiff's grievance.

As remedies, Plaintiff seeks to have Lieutenant Day investigated and have the Department of Justice investigate the Jail.  Plaintiff asks for an MRI to see if the needle remains in him and may continue to injure him.  Plaintiff seeks medical treatment and soft shoe chrono for the injury to the bottom of his feet caused by kicking the shower door.  Plaintiff also seeks a brain scan and

MRI for his knuckles.  He seeks compensatory and punitive damages.

**C.     Discussion**

**1.     Federal Rule of Civil Procedure 8**

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted).  This is because, while factual allegations are accepted as true, legal conclusions are not.  Id.; see also Twombly, 550 U.S. at 556–57; Moss, 572 F.3d at 969. Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).

Most of Plaintiff's allegations are vague and conclusory statements.  As currently pled, Plaintiff's complaint does not contain enough factual details to permit the Court to draw the reasonable inference that any named Defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.  Plaintiff names various officers as Defendants, however, Plaintiff's description of the alleged events is only general and conclusory statements.  Plaintiff's complaint alleges various claims but does not clearly state which claim is alleged against which defendant, and which specific facts support each claim.  Plaintiff's complaint is completely devoid of dates, identities of individuals involved, and any acts committed by any persons that relate to any claim.

**2.     Linkage**

The Civil Rights Act under which this action was filed provides:

Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an

5

action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658; Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff's amended complaint fails to identify any defendant in connection with his allegations. Plaintiff has not adequately identified or linked any defendant to an action or omission that resulted in a violation of his constitutional rights. Plaintiff alleges Quintero, Rodriguez, Womack took some actions, but fails to say what they did. Plaintiff's conclusory statement that they "blocked" access to a nurse is insufficient. Plaintiff must identify each defendant and allege what each of these defendants did or did not do that resulted in a constitutional violation.

### 3. Supervisor Liability

Insofar as Plaintiff is attempting to sue any Defendant Lieutenant or Sergeant, or any other defendant, based on his or her supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation."

Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

### 4.     Board of Supervisors

Plaintiff names the "Board of Supervisors" as a defendant.

A local government unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. Monell v. Dep't of Soc. Services, 436 U.S. 658, 691 (1978); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Webb v. Sloan, 330 F.3d 1158, 1163–64 (9th Cir. 2003). Rather, a local government unit may only be held liable if it inflicts the injury complained of. Monell, 436 U.S. at 694; Gibson, 290 F.3d at 1185.

Generally, a claim against a local government unit for municipal or county liability requires an allegation that "a deliberate policy, custom, or practice . . . was the 'moving force' behind the constitutional violation . . . suffered." Galen v. Cty. of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007); City of Canton, Ohio, v. Harris, 489 U.S. 378, 385 (1989). Alternatively, and more difficult to prove, municipal liability may be imposed where the local government unit's omission led to the constitutional violation by its employee. Gibson, 290 F.3d at 1186. Under this route to municipal liability, the "plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." Id. Deliberate indifference requires a showing "that the municipality was on actual or constructive notice that its omissions would likely result in a constitutional violation." Id.

Here, although Plaintiff names the Kings County Board of Supervisors, he makes no allegations that would sustain liability under Monell. He does not allege facts to support a claim that an alleged constitutional violation was the result of a deliberate policy, custom or practice instituted by Kings County. He also fails to allege that any omission on the part of Kings County caused an employee to commit a constitutional violation.

### 5.     Medical Claims

To the extent that Plaintiff was a pretrial detainee during the relevant time period, his claims concerning the conditions of his confinement or deprivation of a medical care arise under

the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979) (noting that "the Due Process Clause rather than the Eighth Amendment" is relied on in considering claims of pretrial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions"); Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) ("We have said that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." (internal quotation marks omitted)).

The Ninth Circuit has held that "the proper standard of review" for claims of inadequate medical care for pretrial detainees is "objective indifference." Gordon v. Cty. of Orange, 888 F.3d 1118, 1120, 1124–25 (9th Cir. 2018) (extending the "objective deliberate indifference standard" articulated in Castro to inadequate medical care); see also Horton v. City of Santa Maria, 915 F.3d 592, 602 (9th Cir. 2019) (noting that Gordon "recognized that Castro's objective deliberate indifference standard extends to Fourteenth Amendment claims by pretrial detainees for violations of the right to adequate medical care").

Accordingly, in order to state a claim against any defendant for denial of medical care while a pretrial detainee, plaintiff must allege that the defendant: (1) "made an intentional decision with respect to the conditions under which the plaintiff was confined"; (2) the "conditions put the plaintiff at substantial risk of suffering serious harm"; (3) the "defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"; and (4) "by not taking such measures, the defendant caused the plaintiff's injuries." Gordon, 888 F.3d at 1125.

Plaintiff alleges that some unspecified medical requests were ignored by unknown persons. Plaintiff's generalized and conclusory statements are not sufficient to state a cognizable claim for denial of medical care. He alleges he hurt his knuckles and foot but does not state who he told of the injuries and what those person(s) said or did. There is nothing to suggest that any individual defendant made an intentional decision that put Plaintiff at substantial risk for suffering any harm or that Plaintiff suffered any injuries relative to this claim. In an amended complaint, in

8

order to state a cognizable medical deliberate indifference claim, plaintiff must specifically and plausibly "link" these legal standards with the challenged conduct of each defendant.

### 6. Retaliation

Prisoners (including pretrial detainees) have a First Amendment right to file grievances against correctional or jail officials and to be free from retaliation for doing so. Watison v. Carter, 668 F.3d 1108, 1114–15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). Likewise, prisoners have a right to pursue civil rights claims free from retaliation.

A retaliation claim has five elements. Watison, 668 F.3d at 1114. First, the plaintiff must allege that the retaliated-against conduct is protected. Id. The filing of an inmate grievance is protected conduct, Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech or to petition the government, Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). See also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Second, the plaintiff must show the defendant took adverse action against the plaintiff. Rhodes, at 567. Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Watison, 668 F.3d at 1114. In other words, the plaintiff must show that the retaliation was because of the protected conduct.

Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." Rizzo, 778 F.2d at 532.

Plaintiff alleges Mr. Anderson, would not let Plaintiff eat his meals out of Plaintiff's cell as retaliation. Plaintiff also alleges that he was retaliated against by some of the defendants because Plaintiff had filed a lawsuit in 2014 against Defendant Lieutenant Mr. Day. Plaintiff did not pursue the case against Mr. Day. Plaintiff "assumes" that Lieutenant Mr. Day told his officers down the chain of command to leave Plaintiff in his cell for a week. Here, Plaintiff fails to state a

cognizable claim for retaliation against any of the named defendants. There is no indication from the allegations in the complaint that any individual took an adverse action against Plaintiff because of any protected activity or that the actions of any defendant had a chilling effect on Plaintiff's future First Amendment activities or that he suffered any harm that was more than minimal.

### 7. Conditions of Confinement

"[P]re-adjudication detainees retain greater liberty protections than convicted ones." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations omitted). As a pretrial detainee, Plaintiff is protected from conditions of confinement which amount to punishment. Bell v. Wolfish, 441 U.S. 520, 535–36 (1979); Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1017–18 (9th Cir. 2010).

It is the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, which governs pretrial detainees. Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067–68 (9th Cir. 2016). In order to state a cognizable claim for unconstitutional conditions of confinement related to a risk to safety or health, a plaintiff must specifically plead as follows: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. Castro, 833 F.3d at 1071. With respect to the third element, the defendant's conduct must be "objectively unreasonable." Id. (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)).

Plaintiff alleges he was left in a cell with feces on cell wall. Plaintiff has not alleged sufficient facts to state any claim based on the conditions of his confinement at the jail. Although conditions of confinement claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Cruel and Unusual Punishments Clause of the Eighth Amendment, the Eighth Amendment's deliberate indifference

standard sets the minimum standard of care due to pretrial detainees. Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003). "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. Cty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995); see also Johnson, 217 F.3d at 731–32; Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir. 1985). While subjecting "a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," Anderson, 45 F.3d at 1314, opinion amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995), Plaintiff's allegations fail in terms of both severity and length when compared with cases that have found an Eighth Amendment violation. See, e.g., LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) (prisoner confined for five days in strip cell with only a pit toilet and without light, a sink, or other washing facilities), cert. denied, 414 U.S. 878 (1973); McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir. 2001) (inmate forced to live in a feces-covered cell for three days); McCord v. Maggio, 927 F.2d 844, 848 (5th Cir. 1991) (inmate repeatedly had to live in sewage and foul water and slept on a bare mattress in water contaminated with human feces); cf. Hendon v. Reed, No. 1:05-CV-00790-OWW, 2011 WL 2224720, at *7 (E.D. Cal. June 7, 2011) (finding no Eighth Amendment violation where guards threw Plaintiff's own feces and urine on him, but Plaintiff "immediately removed his clothing and was able to clean the substance off of him"). Plaintiff has not alleged how long he was in the cell with his feces smeared on the wall. Plaintiff has failed to allege which defendants told him to stay in his cell or knew of his feces on the wall. Plaintiff has failed to allege any conditions such as if he was provided any cleaning supplies with which to clean his cell.

Plaintiff alleges that defendants laughed at him. Mere vulgar language or name-calling, although distasteful, is insufficient to state a claim for the violation of any constitutional rights. "Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." Oltarzewski v Ruggierro, 830 F.2d at 139 (9th Cir. 1987) (citation and internal quotation marks omitted); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (stating that "verbal harassment generally does not violate the Eighth Amendment"), amended on other grounds by 135 F.3d 1318 (9th Cir. 1998).

### 8. Conspiracy

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir.2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). To have standing to bring this type of claim, Plaintiff must also allege he suffered an actual injury. Vandelft v. Moses, 31 F.3d 794, 798 (9th Cir. 1994).

Plaintiff makes general, omnibus allegations that the Defendants, in doing the myriad of acts alleged, were doing so in the furtherance of some conspiracy. Plaintiff must plead the basic elements of a civil conspiracy: an agreement and concerted action amongst the defendants in the furtherance of that agreement, and that each defendant conspired to violate Plaintiff's constitutional rights. See also Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008) (noting that a bare allegation of a conspiracy is almost impossible to defend against where numerous individuals are concerned).

### 9. Equal Protection Claim

Plaintiff alleges that he was treated differently from other inmates who were similarly situated without good reason, which violated his right to safety and security of inmates.

The Equal Protection Clause provides "that no State shall deny to any person within its jurisdiction the equal protection of the laws[.]" U.S. const. amend. XIV. The Equal Protection Clause requires that persons similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439; Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"). However, in order to state an equal protection claim under this "class of one" theory, plaintiff must allege facts to plausibly show that: (1) he is a member of an identifiable class; (2) he was intentionally

treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Nurre v. Whitehead, 580 F.3d 1087, 1098 (9th Cir. 2009) (citing Village of Willowbrook, 528 U.S. at 564). Further, plaintiff must allege discriminatory intent. See Washington v. Davis, 426 U.S. 229, 239–40 (1976); Serrano v. Francis, 345 F.3d 1071, 1081–82 (9th Cir. 2003).

"The first step in determining whether [defendants] violated [plaintiff's] right to equal protection is to identify the relevant class to which he belonged." Furnace, 705 F.3d at 1030, citing Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005). "The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified . . . . An equal protection claim will not lie by 'conflating all persons not injured into a preferred class receiving better treatment" than the plaintiff.'" Thornton, 425 F.3d at 1167, quoting Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir. 1986).

Plaintiff does not allege he is a member of any suspect or protected class, and he fails to allege that any defendant denied plaintiff any rights based on membership in any suspect or protected class. Plaintiff also alleges no discriminatory intent by any named defendant, for example, that any defendant intended to discriminate against plaintiff. Plaintiff's conclusory allegations are insufficient.

### 10. Injunctive Relief

Insofar as Plaintiff seeks injunctive relief against prison officials, any such request is now moot. Plaintiff is no longer housed at the Kings County Jail, where he alleges the incidents at issue occurred, and where the jail officials are employed. Therefore, any injunctive relief against officials at Kings County is moot. See Andrews v. Cervantes, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

///

///

1  **III.    Failure to Prosecute and Failure to Obey a Court Order**

2      **A.    Legal Standard**

3      Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal."  Thompson v. Hous. Auth., 782 F.2d 829, 831 (9th Cir. 1986).  A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules.  See, e.g., Ghazali v. Moran, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); Malone v. U.S. Postal Serv., 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

    In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.  Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986); Carey v. King, 856 F.2d 1439, 1440 (9th Cir. 1988).

    **B.    Discussion**

    Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the Court's orders.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

    The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action.  Anderson v. Air W., 542 F.2d 522, 524 (9th Cir. 1976).  The fourth factor usually weighs against dismissal because public policy favors disposition on the merits.  Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002).  However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes

progress in that direction," which is the case here. In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. Ferdik, 963 F.2d at 1262; Malone, 833 at 132–33; Henderson, 779 F.2d at 1424. The Court's March 30, 2020 screening order expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (ECF No. 8, p. 14.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Plaintiff is proceeding *in forma pauperis* in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

## IV.     Conclusion and Recommendation

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a district judge to this action.

Further, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a Court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v.

1  <u>Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

3  IT IS SO ORDERED.

4  Dated:   **May 18, 2020**                    /s/ *Barbara A. McAuliffe*
5                                                                 UNITED STATES MAGISTRATE JUDGE